22-2001 Torres v. Madrid Ms. Corcoran, are you ready to proceed? Good morning, Your Honors, and may it please the Court. My name is Kelsey Brown Corcoran. I'm here on behalf of the Plaintiff Appellant Roxanne Torres. The issue on appeal is whether Ms. Torres has offered sufficient evidence at the summary judgment stage to demonstrate a triable issue of fact as to whether the defendants were no longer in danger of being hit by her car when they shot the two bullets that lodged in her back as she drove away from them. I have a problem with this argument as to the final bullets because as I look at the district court record, I don't think you made an argument separating the first volley of shots from the last shots. And I don't think you can do it for the first time on appeal. Explain to me why I'm wrong. Yes, so if you look, we're at the summary judgment stage, so as opposed to looking at the complaint, we're looking at the summary judgment briefing. In the opposition to the summary judgment motion on page 110.6, Defendant Williamson continued to shoot into the back of the vehicle after it had passed them, and Defendant Madrid and Williamson were out of any alleged danger. There's no argument related to that. I mean, you're stating the facts, but then there's no argument that separates it out into two distinct legal concepts. One is, were the initial shots justified because she was using her automobile as a dangerous weapon? And secondly, was there a point at which they should have known they were no longer in danger and shot two more times? And I don't see the second part of that argument having been made. Well, and the district court didn't address it either. Yes, so I would point out, I was reading from the factual recitations in the opposition to summary judgment motion. I'd also point to 114R and 114T, but then getting into the argument section, page 123 of the adjoint appendix, it was clearly established that shooting an unarmed civilian in the back when she was no danger, and then also on 125 referring to the heck argument. So I think in both those places, you have the argument that the relevant shots here, the two that entered her back, were shot after they were no longer in danger. And I would say also that the defendants have not argued on appeal that we forfeited any of these arguments. So to the extent there was a forfeiture, I think it's a forfeiture of the forfeiture argument. But I do think these are preserved in the pages in the joint appendix that I have cited. So at the time of the shooting, this court's decision in Cordova v. Aragon clearly established that it was unreasonable to use deadly force to stop a fleeing vehicle after any immediate threat from the suspect's flight had passed. And this court has since reaffirmed that in Revis v. Frost and Simpson v. Little. So if we look at the bullet trajectory evidence here, along with the depositions of the defendants and fellow officer at the scene, which all confirm that the defendants continued to shoot at Ms. Torres as she drove away, easily suffices to defeat summary judgment and allow Ms. Torres' excessive force claim to go to a jury. The defendants make three fundamental errors in arguing otherwise. First, they assert qualified immunity based on a fact that the defendants did not know when they shot at Ms. Torres. The Supreme Court has emphasized in numerous cases that the qualified immunity inquiry is limited to the facts known to the officers in the moment that they decide to shoot. The defendants do not and cannot claim that the legal uncertainty arising from Ms. Torres' ultimate escape had any bearing on their decision to shoot at her because it had not happened yet. Second, the defendants ignore the summary judgment standard. In response to the clearly established precedent I cited, Cordova, Revis, Simpson, the defendants assert only that they were in fact in immediate danger when they shot the two bullets that lodged in Ms. Torres' back as she drove away. But they cannot prevail on that argument unless the record contains no evidence that would permit a reasonable jury to find that the defendants were no longer in danger when they shot those bullets and that they should have reasonably apprehended that. Their sole evidentiary argument is that the seven seconds of shooting is too short a period of time to segment out the shots that were discharged while Ms. Torres was passing from the shots that were discharged after she had driven away. But this court has repeatedly explained that force justified at the beginning of an encounter is no longer justified even seconds later if the danger has passed, and a reasonable jury could certainly find, given where the defendants were, at the driver's side door, that a car accelerating out of a parking space would have seven seconds later been far from the defendants at that point and that they should have reasonably perceived that the justification for the use of deadly force had passed. Was there any testimony about how far the officers were at the time the last shots were fired into the back? No, we only have audio because they didn't turn on their video. No testimony about it? No, we don't know how far. We know that she accelerated out of the parking spot and went across the parking spot. And again, this is a question that goes to a jury. I think it might be helpful to think about this case as one with three factual predicates to the qualified immunity question. The first factual predicate is whether the defendants were initially in danger when she lurched out of the spot. We can see that they were because we have to under HEC v. Humphrey, and that's, I think, the extent of the HEC analysis. And then the two other factual questions or factual predicates are, were they in danger when they shot the two bullets that went into her back? And two, should they have reasonably perceived they were no longer in danger? Those two questions, at the summary judgment stage, if we have shown that a reasonable jury could find that they were not in danger  then the qualified immunity question is, was it clearly established that they continued to shoot after the danger had passed and they should have reasonably perceived that, that the use of deadly force at that point was unlawful? Turning to the clearly established, where this circuit had taken a position on seizure for purposes of the analysis, and under our law that Ms. Torres was never seized, and in other circuits you were seized, and now the Supreme Court has made it clear that if you shoot your gun at someone, they're seized. I wonder how can it be clearly established that there was a violation of constitutional rights here where until the Supreme Court ruled there wasn't even a seizure here, at least in this circuit? Yes, thank you. So I think when you ask whether it clearly established constitutional violation or that the cases that articulate the qualified immunity inquiry in that way are doing it in a context where the defendant's conduct completes the constitutional violation, there are some circumstances like we had here before the Supreme Court's decision where the completion of the constitutional violation is outside of the defendant's knowledge or control. You have that in First Amendment retaliation claims as well. You don't know if it's going to chill the speech. You have it in a malicious prosecution claim. You don't know if it's going to end in a favorable termination. So under those circumstances, we look to the articulation of the qualified immunity inquiry in Brousseau, which is whether the officer's decision to shoot was based on a reasonable misapprehension of the law governing the circumstances she confronted. And here, the fact of Ms. Torres' escape was not a fact that the defendants knew when they discharged their weapons, so it's irrelevant to the qualified immunity inquiry. And Hernandez v. Mesa by the Supreme Court is precisely on point. There, the Fifth Circuit had held that the Border Patrol agent was entitled to qualified immunity because it turned out that the teenager that he shot was a Mexican national, and it was not clear whether the Fifth Amendment prohibited the use of force against a foreign national on foreign soil. The Supreme Court reversed in a per curiam decision, unanimous on this point, holding that the legal uncertainty arising from the teenager's nationality was not relevant to the qualified immunity inquiry because the Border Patrol agent did not know that fact when he chose to shoot. That's exactly what we have here. The legal uncertainty arising from Ms. Torres' ultimate escape is not relevant to the qualified immunity because it was not a factor that had any bearing on the decision to shoot her. That's the Hernandez case, right? Excuse me? That's Hernandez? That's Hernandez v. Mesa. I thought you said Brousseau. Earlier when I was articulating the qualified immunity, it was Brousseau v. Hagen. And I will say on Hernandez v. Mesa, it's the 2017 Supreme Court decision. It went back in 2020. And in fact, in 2020, the plaintiff ended up losing that case, but not on qualified immunity grounds. If there are no further questions, I'll save my time for rebuttal. Ms. Britton. Good morning. May it please the Court. The motion before the district court was on the qualified immunity issue. And it should be upheld, the district court's opinion should be upheld, not only because the Fourth Amendment right was not clearly established at the time, that was only established in 2021 when the Supreme Court resolved the issue and the split between the circuits, and also what... Let's stop there for a minute. How do you deal with Hernandez? Well, Hernandez dealt with... A fact, not a law, legal question, right? Right. And it dealt with sort of distantly, I'll say, post hoc facts that were relevant to the inquiry. Here, the shooting and the immediate aftermath were immediately known. In all of these cases, like the First Amendment case and in Hernandez, there were, I would say, temporal distance. And the Fourth Amendment rule, even as it stands now, is necessarily a post hoc decision. If the police never hit her, or let's take an example where a police officer wanted to strangle her and tripped and fell on the way, would the Fourth Amendment be implicated? The answer would likely be no, because there was no use of force actually effectuated. And so until the Supreme Court enunciated this new rule about seizure and how it relates to the Fourth Amendment, there was no way that the officers in this case, or any reasonable officer, would have known that the Constitution was implicated at all. They knew that if they shot and hit her and stopped her, that they would be subject to a reasonableness inquiry. And the law was clearly established that when they could reasonably realize they were no longer in danger, they can't shoot to kill. You're right. That's exactly right. So the qualified immunity defense is, well, they didn't know whether they would hit her, whether if they successfully hit her, she would stop. So they didn't know whether, in fact, she would be seized. That's your argument? Correct. Or that she had been hit at all. Okay. But then doesn't Hernandez's decision say the action that they took, firing the gun, has to be evaluated for qualified immunity purposes on the basis of what they knew when they fired the gun? And they didn't know that she was going to be able to escape. Doesn't that resolve the issue against you? I will say that there is, in qualified immunity law, the rule that you shouldn't take a segmented view of all the actions. I think here, because this was a six- or seven-second-long incident that then immediately resulted in her driving away without this knowledge, that the qualified immunity issue isn't precisely resolved in this case. Perhaps in the First Amendment case, when you're looking at the long-term effects of a chilling effect, or in the Hernandez v. Mesa case, where there was, you know, determinations about the contacts that the decedent had with the United States. And I will also say that Hernandez was a motion-to-dismiss case, and so there was also this great debate whether there was reasonable belief that there was in the Hernandez v. Mesa opinion. But I also think that regardless of the qualified immunity inquiry as to the narrow holding of the Supreme Court in 2021, we also have the Heck v. Humphrey issue here. And that is that Ms. Torres was convicted of aggregated fleeing. Right, but you can split it out, right? I mean, if in fact she had already passed the officers and they fired two more shots and shot her in the back, you can, her conviction for aggravated, I think it was aggravated assault with the vehicle, would be for when they fired the initial bullets, which would be justified, because she was using her car as a weapon against them, right? But the argument is that it's for the jury to decide whether there was enough of a break between those earlier shots and the later shots that a reasonable officer should have known, should have perceived they were no longer in danger. She was no longer coming at them with the car and therefore should have known that they can't shoot to kill. Right. So I don't know that you have a heck defense to the last two shots is my point. OK. And I think in answer to that, I would say that, in fact, we have two heck defenses. One of them is that in the Havens versus Johnson case, which was decided by this court in 2015, that I think is really on all fours here, where the plaintiff in Havens was shot out and was convicted. I think it was an attempted assault against a police officer. And then later in the 1983 civil rights claim, he claimed total innocence. And that's what Miss Torres has claimed here in her complaint that comes directly from her complaint that she did nothing wrong. She was under the misunderstanding that she was being carjacked and was running away from her own safety. And that is the Havens case. And that is this case. And that is one of the reasons that the district court and one of the cases that the district court looked to in the second round of courts. I thought in Havens, the argument that is being made here by the plaintiff simply wasn't made. So we didn't address that. There was there was no argument. I don't believe. It's been a while since I wrote that. This was a possible argument that could have been made there, but we didn't need to address it because that wasn't made. And that's, I think, what Judge McHugh was pursuing at the very beginning of this argument was, was that distinction made? And counsel says it was made in our brief. And in any event, there wasn't a claim that they had forfeited that argument. Right. Sorry. Go ahead. Suffice to say, I mean, I disagree. That is how the complaint still stands today. Total innocence. And that's what Miss Torres testified to in her deposition. Not that. Yes, I admit that. Did you argue this point in your response brief in this court? The point about the different volume shots? Yes. That it takes care of everything? Yes. Correct. Because she claimed total innocence? Correct. But at this stage, and certainly in the district court, I thought she was conceding or conceding the issue. And so she realized that she can't claim complete innocence now. There's a judgment that binds her, so under heck. But she was insisting that even if she was, wasn't innocent, that doesn't justify the last couple shots. I don't think that's how Havens came up. I don't think that was the posture of Havens. Well, the question about whether there was, in our case, in this case, a first or second volley of shots only initially came up, I believe, clearly, in the reply briefing in this appellate battery. It was never addressed. There was never a motion, for example, to amend the complaint. The point when I asked that, because I didn't think it was raised in the district court, was, you know, we have a waiver of the waiver rule or forfeiture of the forfeiture rule. And the point that was made earlier was that you didn't argue that in here, that they were raising it for the first time on appeal. Well, I'm not sure that I necessarily agree with that, because I think that the way that the appeal from the district court was of this Fourth Amendment seizure qualified immunity issue, and then the total innocence issue. And those were the two basis. And then the second part of Havens, which is that all of the cases cited as controlling precedent, the Simpson case and so on, really isn't. Because those cases involved, and the Cordova opinion, those cases involved that there was no threat at any time, and it was just a hypothetical threat. That at the time that the shooting occurred, it had already been known that no one was in danger. And so that is a clear distinguishing fact between this case and those cases. And I think the clear case on point is the Thomas versus Durastanti case, which is where the plainclothes agents attempted to pull over a car they thought was a stolen car. And the car drove out the agents, and there was a fire of shots that was, that continued after the car passed them for a short period of time. So this is your argument that somehow, because there were how many, 13 shots fired in seven seconds, that somehow this short amount of time makes the difference here? But we've held in several cases that even when the officer's decision is essentially evolving over a matter of seconds, a matter of seconds, two, three, four seconds, that the circumstances can change during that time, and that they can no longer be threatened as they might have been at the beginning of the second second period. Correct, Your Honor. How are the cases in which... So how is this case different? Well, I think that the case to look at is the Thomas versus Durastanti case, which is from this circuit in 2010. Let me ask you something about that case. Is that a Fourth Amendment case or a substantive process case? Because the standard's rather different. That was... It makes a difference. I believe it was a Fourth Amendment case, because it would also involve the reasonable use of force. So in that case, because it was a matter of seconds and so on, the entirety of the incident, both when the car was oncoming and both when the car passed, was deemed to have been reasonable. Let me see here. Well, that was the one where they actually hit the officer, and he's rolling around, and he shoots after he's been knocked down. Correct. Correct. And I think that is more in line with the facts of this case versus... How is that even closely in line with the facts? How is it possibly in line with the facts of this case? Because at some point, we know that the officers were in danger of their lives, in danger of their safety. Both of them were, based on the things. Right. So that is different than... And we have a conviction. Because we have the conviction, so we cannot contest that. And we also know that in the Simpson v. Little case, and the... Simpson v. Little, the guy's flat on the ground, face down, and the gun is no longer anywhere near his hands. And according to witness testimony, the guy had time to turn around and shake his head at the officer before the officer shot three more times into a noise line on the ground. That's not this case. Right. Exactly. That's exactly my point, is that we can't look at Simpson. We can't look at Cordova, even, because in those cases, it was undisputed and undisputable that there was no threat at the time. We have to look at the facts, and the light was favorable to the plaintiff here, and that definitely shows that there is certainly... It's certainly reasonable to assume that as they were shooting him in the back, that there was no threat to them. That he was beyond where they were this threat to him, at that point, in those last two shots, at a minimum. Those are the facts, and the light was favorable to the plaintiff. Why isn't this case like Rivas, where we relied on Cordova? And I guess the question... The other question is, shouldn't... The point is, this is whether the jury gets to decide whether, under these facts, a reasonable officer would have known the car had passed, the danger had passed, and they're shooting into the back of the car as it's fleeing no longer a danger to them. I mean, that's the question. Should it go to the jury? And in looking at it at the summary judgment phase, do we take all the reasonable inferences, everything in the light most favorable to Ms. Torres? And you're right. That is the standard in what we do. But as we know from both the convictions that are uncontestable and the sheer fact that this was a matter of seconds after the officers had been immediately threatened, and that the shooting is reasonable, and that is something that this court and the district court can conclude without having it go to the jury. I mean, in the Rivas v. Frost case, I'll note that that is a 2020 opinion, so it postdates the incident here, which was in 2014. But the key fact in Rivas was that the officer had said that as the plaintiff was passing by, he was able to watch. He was able to place the car into the sight picture of his gun and then shoot. So in all of these cases, and you're right, Your Honorable Moritz, that the distinguishing issue is that in all of these other cases, there is a time for deliberation. In this case, there is none. There were seconds in Rivas. There were seconds. Seconds. However, the undisputed facts there were that those seconds allowed the officer to stop, place, aim in the sight distance or whatever it's called, the sight picture of his weapon before shooting. So there was an opportunity to deliberate. Let me ask you a final question. You brought this up a little earlier, and I wanted to make sure I was understanding your point. On the forfeiture of the forfeiture issue, I think you said that the distinction between the last couple shots from the earlier shots was not presented in the opening brief on appeal, but just in the reply brief. If that were the case, you don't have an opportunity to object, but is that your position? That's my understanding. I mean, certainly reasonable minds could disagree, but that's my understanding is that this distinguishing between the first and second was not briefed before the district court and was not the basis of the appeal here. It was based in the opening brief on appeal. I will look more carefully, but certainly it was news to me that that was the issue that we were talking about today versus the Fourth Amendment 2021 decision. Thank you. Thank you. Ms. Corcoran, why don't you address that point? Yes. So I will say that the claim here has always been based on the two shots that were lodged in her back because those would cause the injury. Is that clear? Do you think that's clear in your opening brief that you're distinguishing that? Yes, I think that the entirety of our opening brief is based on this argument. So I'll leave that there. And then just again, I guess I'll go there also and jump to the Heck point. My friend was talking about the complaint allegations. It's important to remember here the district court denied their motion to dismiss on Heck grounds at the pleading stage. We are at the summary judgment stage, and so we're looking at the evidence that was proffered at the summary judgment stage. And Heck is really an evidentiary rule. What you do is go through and cross out any evidence, any allegations that conflict with the plea agreement here. And then you ask, is there still a claim that can be stated that can go forward to a jury? And we know that from Martinez. The court was looking at the evidence in that case as well. And to the extent that there are allegations in either the complaint or in the opposition to the summary judgment motion that suggests that Ms. Torres was not in fact in danger. We know from Hooks and Martinez and McCoy that the proper course is to strike those allegations, not to dismiss the whole claim. And then you ask whether the case can go forward. And we think it can for the reasons that we've already discussed. So and I would say also in Havens, the court noted that not even in the plaintiff's opening brief before this court was there a theory of excessive force that could be reconciled with the conviction. That's kind of what I remember. Yes. So moving on to I'll continue to go backwards. The amount of time in Simpson and just a state of smart is the case, Judge McHugh, where McHugh, where the person was on the ground lying back. I understood our argument is Simpson's belittle, which is another one like Revis and Cordova, where the suspect was driving at the officer and then swerved and all the bullets went through the side in the back. In Simpson, it was two point five seconds. In Revis, the opinion doesn't say, but I listened to the oral argument and the defendant there said it was point six seconds that the five to seven shots were issued. So here we are talking about seven seconds. And again, I think a jury can count that out, make a decision for itself. In the last two and a half minutes, I just want to go back to Hernandez. Both cases involve a post hoc fact in in Hernandez. The post hoc fact was that the teenagers nationality here is Miss Torres's ultimate escape. We know from Mullinex and countless other cases, you're looking with the officer knows when they discharge the weapon. The defendants here did not know when they discharged their weapon that Miss Torres was going to be escaped. In fact, their intent and expectation was to effectuate a Fourth Amendment seizure. And if the possibility of her escape was enough to entitle them to qualified immunity, that would mean that every officer and every fatal shooting case involving a fleeing suspect before 2021 was entitled to qualified immunity because of the possibility that legal uncertainty would impact the Fourth Amendment analysis. They have no explanation for how that pre-Torres circuit split had any impact on their decision making process. And we know from Pearson v. Callahan that the purpose of qualified immunity is to make sure that officers are able to take personal responsibility for their conduct. So an officer who makes a reasonable decision should be immune from from suit, whereas an officer who makes a poor decision that violates clearly established law is not immune from suit. They must be held responsible. And so allowing the defendants to incorporate retrospective facts into the qualified immunity analysis upsets that balance. And this is consistent with the precedent of this court and also the Supreme Court. Thank you, counsel. Thank you.